# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MARIA MANGA**, <br><br> Plaintiff, <br><br> v. <br><br> **JOVITA CARRANZA**, *in her official capacity as Administrator of the United States Small Business Administration, et al.*,[1] <br><br> Defendants. | Case No. 1:18-cv-00437 (TNM) |

## MEMORANDUM OPINION

The Small Business Administration terminated Maria Manga in November 2016 following a months-long dispute about her work requirements. After a winding path through a stop at the Merit Systems Protection Board, a hearing before an administrative law judge, and several civil complaints filed here and in the District of Maryland, her case arrived in this Court dressed as a *pro se* Freedom of Information Act claim. Now, with the benefit of counsel, Manga sought leave to amend her claims, producing the Second Amended Complaint. *See* Sec. Am. Compl. ("SAC"), ECF No. 54; Minute Entry (09/18/2019).

In it, she sues the Small Business Administration and its Administrator (collectively, "the SBA") for wrongful termination, along with other counts all tied to that core claim: negligent supervision, violation of the federal and D.C. Family and Medical Leave Acts, and retaliation. SAC at 5–10. In response, the SBA has moved for dismissal or summary judgment. Defs.' Mot.

---

[1] Under Rule 25(d) of the Federal Rules of Civil Procedure, Jovita Carranza is substituted for Linda McMahon, former Administrator of the U.S. Small Business Administration, as a Defendant in this suit.

Dismiss or Summ. J. ("Defs.' Mot."), ECF No. 61. Manga opposes the SBA's motion but limits her arguments to the Family and Medical Leave Act ("FMLA") claims. *See generally* Pl.'s Opp'n, ECF No. 63. But those FMLA claims are unavailable to Manga by statute. As a result, and because the Court lacks jurisdiction over the rest of Manga's claims, the Court will grant the SBA's motion and dismiss the case.[2]

## I.

Manga began working for the SBA in 1998. SAC ¶ 8. A long-time Washington, D.C. resident, she worked for many years in the SBA's Washington office. *Id*. ¶ 1. That is, until, according to Manga, her supervisor Eugene Stewman "assaulted her in his office" in September 2013. SAC ¶ 30; *see also* Compl. at 1–2, *Manga v. Stewman*, 14-cv-00828-RMC (D.D.C. May 20, 2014), ECF No. 1 ("[H]e placed his right hand on my left shoulder and pushed me very firmly against the door causing me pain."). The following summer, the SBA transferred her from the Washington, D.C., office to the Baltimore office.[3] SAC ¶ 11; Merit Systems Protection Board No. PH-0752-17-0096-I-1 ("ALJ Decision") (Dec. 7, 2017) 2, ECF No. 61-2.

And Manga continued in the Baltimore office until the events that brought about this lawsuit unfolded in October 2015, when Manga collapsed at work, lost consciousness, and was rushed by ambulance to a hospital. ALJ Decision at 2; SAC ¶ 15. As it turned out, Manga never returned to work. Gery Decl. Ex. 3, ECF No. 61-2.

Manga was comatose for at least "several days" in the hospital, though her treating physicians never diagnosed the cause. *Id*. at 3; *cf*. SAC ¶ 16 ("[Manga] was unresponsive and

---

[2] Because the Court resolves all of Manga's claims under Federal Rule of Civil Procedure 12(b)(1), (6), the Court does not reach the SBA's arguments for summary judgment.
[3] *But see* SAC ¶¶ 9–11 ("In 2016 Plaintiff was working in the [SBA] office in Washington [when she] "was assaulted by Eugene Stewman, her supervisor at the SBA Washington office. As a result of that incident, Plaintiff was transferred to the Baltimore SBA office."). It appears that this 2016 date is a typographical error. The record of this case makes plain that Manga never returned to work—either in Baltimore or Washington, D.C.—after October 29, 2015. *See id*. ¶ 15 ("On October 29, 2015 Plaintiff collapsed at her Baltimore office[.]").

remained unconscious for two weeks."). Several of her co-workers visited her in the hospital, SAC ¶ 43, and the Deputy Director contacted her to document her absence with sick leave, ALJ Decision at 3. After her release from the hospital, Manga recovered through weeks of therapy, SAC ¶ 17, while "she had to relearn how to walk and perform other functions," *Id*. ¶ 44. The SBA approved Manga's requests to take sick leave from the date of her hospitalization, October 29, 2015, through December 31, 2015. ALJ Decision at 4–7.

But in the new year, the matter of Manga's continued absence got contentious. After two months convalescing, the SBA expected her to return to work in Baltimore. *Id*. at 7. Manga hoped for the "reasonable work accommodation" of a transfer back to Washington, D.C. *Id*. at 5; *see also* SAC at 4 (stating Manga's desire to be "Reinstate[d] . . . to her position in the Washington SBA office"). Her doctor sent a letter on her behalf at the beginning of the year saying that "her only limitation is her decreased mobility," and that "she could perform her job functions if she did not have an onerous commute." ALJ Decision at 5. Manga also submitted for more sick leave through the end of January 2016, and then again through the end of March. *Id*. at 7.

But the Baltimore Deputy Director did not approve Manga's leave or her transfer. *Id*. at 8–9. As the SBA saw it, Manga's doctor note explained why she might prefer a move back to Washington, D.C., but it did not justify her continued absence from the Baltimore office. *Id*. at 9. Instead, the Deputy Director warned Manga and her then-attorney that she would "be placed on AWOL [Absence Without Leave] status" if she did not submit adequate medical documentation. *Id*. at 9. Then at the end of February 2016, the Deputy Director emailed Manga and her attorney again, noting that although the SBA had "provided specific information on the Family [and] Medical Leave Act (FMLA)," Manga had not responded with "specificity." *Id*. He

3

included another warning that he would place Manga on AWOL status starting from January 4, 2016, unless he received a response. *Id*. The next day, Manga and her attorney held a conference call with the Deputy Director. *Id*. They assured the Deputy Director that a more specific doctor's note would be forthcoming within days. *Id*. So the SBA did not hold Manga as AWOL—yet. *Id*.

When Manga's doctor sent the promised note, the Deputy Director was unmoved. *Id*. at 10. The SBA wanted a letter recommending excusal because Manga was "medically restricted from reporting to work." *Id*. But what it got was the doctor's opinion that Manga had "continued low back pain," and "could be working [at] the D.C. office" "with accommodations" including "an ergonomic chair with lumbar support" and "a standing optional desk." *Id*. As far as the SBA was concerned, that meant Manga could also be working at the Baltimore office with those same accommodations. *Id*. at 7, 11. So the SBA declared Manga AWOL. *Id*. at 10–11.

That was early March 2016, and the SBA continued to mark her AWOL until late April 2016, when the Deputy Director notified Manga of her proposed removal for being AWOL and failing to follow leave procedures. *Id*. at 11; SAC ¶ 23. Finally, a year after her hospitalization, the Director of the Baltimore office sustained the violations and approved her removal. SAC ¶ 18; Gery Decl. Ex. 2, ECF No. 61-2.

Manga appealed to the MSPB on various grounds, including violation of the FMLA. ALJ Decision at 1, 12–14, 19; *see* 5 U.S.C. § 7701(a) ("An employee . . . may submit an appeal to the Merit Systems Protection Board from any action which is appealable to the Board under any law, rule or regulation."). An administrative law judge ("ALJ") reviewed filings from Manga and the SBA, then conducted a video hearing. ALJ Decision at 1, 13–14; *see* 5 U.S.C. § 7701(b)(1) ("[I]n any case involving a removal from the service, the case shall be heard by the

Board, an employee experienced in hearing appeals, or an administrative law judge."). After taking testimony from Manga, her character witnesses, and the Baltimore Deputy Director and Director, the ALJ denied Manga's appeal. *Id*. at 14; *see generally id*.

Manga later sued, and her Second Amended Complaint is now at issue. *See generally* SAC. There are four remaining counts after Manga voluntarily dismissed Counts I and II. *See* Minute Entry (09/18/2019). Count III alleges negligent supervision for the assault in September 2013. SAC ¶¶ 29–36. Count IV alleges wrongful termination. *Id*. ¶¶ 37–54. Count V alleges wrongful discharge in violation of the federal and D.C. Family and Medical Leave Acts. *Id*. ¶¶ 55–64. And Count VI alleges retaliation in violation of the same Family and Medical Leave Acts. *Id*. ¶¶ 65–69. The SBA has moved for dismissal or summary judgment. Defs.' Mot. at 7–13; *see* Fed. R. Civ. P. 12(b)(1), 12(b)(6), 56. Manga opposes the SBA's motion, Pl'.s Opp'n, ECF No. 63, and the SBA has replied, Defs.' Reply, ECF No. 64. The SBA's motion is now ripe for decision.

## II.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), Manga bears the burden of establishing that the Court has subject matter jurisdiction over her claims. *See Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007). In conducting its review, the Court may consider "the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[4] *Herbert v. Nat'l Acad. of Sci.*, 974 F.2d 192, 197 (D.C. Cir. 1992). It accepts as true all factual allegations in the complaint. *Id*. It also gives the SBA "the

---

[4] Under Rule 12(b)(1), unlike Rule 12(b)(6), the Court "may consider materials outside the pleadings." *Am. Freedom Law Ctr. v. Obama*, 821 F.3d 44, 49 (D.C. Cir. 2016). The Court thus relies on the ALJ's findings and the allegations in Manga's prior lawsuits solely for resolution of the SBA's 12(b)(1) arguments.

benefit of all favorable inferences that can be drawn from the alleged facts." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a plaintiff "fail[s] to state a claim upon which relief can be granted." A valid claim must consist of factual allegations that, if true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Mere "labels and conclusions" or "naked assertion[s] devoid of further factual enhancement" are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Under Rule 12(b)(6), the Court construes Manga's allegations in the light most favorable to her and accepts as true all reasonable factual inferences drawn from well-pleaded allegations. *In re United Mine Workers of Am. Emp. Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994). The Court need not, however, accept legal conclusions or conclusory statements as true. *Iqbal*, 556 U.S. at 678.

### III.

### A.

The SBA first takes up the negligent supervision claim in Count III, so the Court will start there too. Defs.' Mot. at 7; *see* SAC ¶¶ 29–36. The SBA argues that the Court lacks jurisdiction over this claim because it "is a time-barred tort action that Plaintiff failed to administratively exhaust." Defs.' Mot. at 7. Tellingly, Manga does not dispute this argument in her opposition. *See generally* Pl.'s Opp'n.

To make out a common law negligent supervision claim under local law, the plaintiff must "show that an employer knew or should have known its employee behaved in a dangerous

or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee." *Miner v. District of Columbia*, 87 F. Supp. 3d 260, 268 (D.D.C. 2015) (quoting *District of Columbia v. Tulin*, 994 A.2d 788, 794 (D.C. 2010)); *cf.* Restatement (Second) of Torts § 317 (1965).

But before a plaintiff can make any tort claim against the United States, the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680, imposes other requirements. For one, "an 'action shall not be instituted upon a claim against the United States for money damages' unless the claimant has first exhausted his administrative remedies." *McNeil v. United States*, 508 U.S. 106, 107 (1993) (quoting 28 U.S.C. § 2675(a)). And for another, certain tort claims "shall be forever barred unless . . . presented in writing to the appropriate Federal agency within two years after such claim accrues[.]" 28 U.S.C. § 2401(b); *see also Norman v. United States*, 467 F.3d 773, 773–74 (D.C. Cir. 2006)). To press her claims, Manga must surpass these twin obstacles of exhaustion and the statute of limitations.

But before addressing even the FTCA requirements, a bit more background is necessary. After the alleged assault in September 2013, Manga sued her supervisor Eugene Stewman for assault and battery. Compl., *Manga v. Stewman*, 14-cv-00828-RMC (D.D.C. Jan. 26, 2015), ECF No. 1. When Stewman raised the FTCA's exhaustion requirement, Manga moved to dismiss voluntarily so she could first pursue administrative remedies.[5] Pl.'s Opp'n and Mot. Vol. Dismiss at 2, *Stewman*, 14-cv-00828-RMC, ECF No. 19 (citing *McNeil v. United States*,

---

[5] Nor was this the last of Manga's lawsuits dismissed for failure to exhaust administrative remedies. In an unrelated case, Judge Hollander of the District of Maryland dismissed discrimination claims for the same reason. *Manga v. Knox*, Civ. A. No. ELH-17-1207, 2018 WL 3239483 (D. Md. July 3, 2018).

508 U.S. at 113). Judge Collyer dismissed Manga's case against Stewman in February 2015.[6] Minute Order (Feb. 5, 2015), *Stewman*, 14-cv-00828-RMC.

That was Manga's claim against Stewman, but what about her negligent supervision claim against the SBA? Here, the story is much the same. The SBA points out that Manga first raised this charge in July 2019 when she filed her Second Amended Complaint. Defs.' Mot. at 8–9 ("There is no evidence that the Plaintiff ever pursued an administrative tort claim against [the] SBA, nor does Plaintiff assert that such a claim was filed."); *see* SAC ¶ 30. And Manga does not argue otherwise. *See generally* Pl.'s Opp'n. Manga has thus implicitly conceded that she failed to exhaust her administrative remedies. *See Payne v. District of Columbia*, 592 F. Supp. 2d 29, 37 (D.D.C. 2008) ("Where a plaintiff addresses some but not all arguments raised in a defendant's motion to dismiss, courts in this district may treat such arguments as conceded."). It is Manga's burden to show that the Court has jurisdiction, *Moms Against Mercury*, 483 F.3d at 828, so her silence on this score is reason enough to dismiss this claim, *McNeil*, 508 U.S. at 107.

But even aside from Manga's concession, the FTCA's two-year statute of limitations is itself an independent barrier to this claim. Manga has known about this alleged injury since it occurred in September 2013. Compl. ¶ 30; Compl., *Stewman*, 14-cv-00828-RMC ("I felt so threatened that I had to call 911. I then informed [a] Union Representative and the security guards that I had just been assaulted by my supervisor[.]"). Yet Manga's claim against the SBA was dormant for nearly six years before she raised it for the first time here.

Statutes of limitation are products of "pervasive legislative judgment" that an adversary party must be given notice "within a specified period of time and that 'the right to be free of stale

---

[6] Manga has neither pled nor presented evidence that she pursued her claims against Stewman any further.

8

claims in time comes to prevail over the right to prosecute them.'" *United States v. Kubrick*, 444 U.S. 111, 117 (1979) (quoting *R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 349 (1944)). Manga sat on this claim for too long to raise it now, when "the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise." *Kubrick*, 444 U.S. at 117. The statute and Supreme Court precedent are clear: The FTCA's statute of limitations "is the balance struck by Congress in the context of tort claims against the Government; and we are not free to construe it so as to defeat its obvious purpose, which is to encourage the prompt presentation of claims." *Id*. The Court will dismiss Count III for lack of jurisdiction.

**B.**

Manga's next claim, Count IV, is for wrongful termination. SAC ¶¶ 37–54. The issue here is whether the claim is proper after Manga pursued her claims with the MSPB. And again, the SBA argues that the Court lacks jurisdiction. Defs.' Mot. at 9–10. Recall that Manga received a full hearing before an ALJ, including written filings, witness testimony, and closing arguments. *See generally* ALJ Decision. More, the ALJ's written decision notified Manga of her rights to request review by the Board or to file a judicial appeal. *Id*. at 25, 29–30. And Manga timely chose to exercise the first option. *See* Gery Decl., Ex. 4, ECF No. 61-2 (showing Petition for Review filed January 2, 2018).

The current status of the Board's review is not entirely clear from the record. The SBA urges the Court to find that the MSPB is still considering the issue, Defs.' Mot. at 9, and there is some support for that conclusion as the case status reflects "Headquarter Pending," *see* Gery Decl., Ex. 4. But on the other hand, it also appears that the Board issued a Rejection Letter in

April 2018, suggesting that the Board's decision is final. *See id*. No matter, because this Court lacks jurisdiction regardless. Here is Congress's judgment on this score:

> Any employee or applicant for employment adversely affected or aggrieved by a final order or decision of the Merit Systems Protection Board may obtain judicial review of the order or decision. . . . Except as provided [elsewhere in] this subsection, a petition to review a final order or final decision of the Board shall be filed in the United States Court of Appeals for the Federal Circuit. Notwithstanding any other provision of law, any petition for review shall be filed within 60 days after the Board issues notice of the final order or decision of the Board.

5 U.S.C. § 7703(a)(1), (b)(1)(A).

So the SBA is correct that the Court lacks jurisdiction over this claim. *See Elgin v. Dep't of Treas.*, 567 U.S. 1, 6 (2012) ("The Federal Circuit has 'exclusive jurisdiction' over appeals from a final decision of the MSPB." (quoting 28 U.S.C. § 1295(a)(9))). Even if the MSPB's review of Manga's administrative case is complete, the Federal Circuit has exclusive jurisdiction. *See Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 775 (1985); *Lacson v. U.S. Dep't of Homeland Sec.*, 726 F.3d 170, 174 (D.C. Cir. 2013). And once again, Manga offers no argument or attempt to save this claim from dismissal. *See generally* Pl.'s Opp'n. The Court will dismiss Count IV for lack of jurisdiction.

## C.

Counts V and VI both rest on the federal and D.C. Family and Medical Leave Acts, so the Court will take these claims together. The SBA argues that Manga has failed to state a claim under Federal Rule of Civil Procedure 12(b)(6), because Manga never invoked her rights under the FMLA, the FMLA's statute of limitations bars the claim, and because Manga has no right of action under the FMLA. Defs.' Mot. at 10–13. Here Manga pushes back against dismissal, but she is selective with her arguments. *See generally* Pl.'s Opp'n. Recall that an unopposed argument from the Defendants warrants dismissal. *See CSX Transp., Inc. v. Commercial Union Ins. Co.*, 82 F.3d 478, 482–83 (D.C. Cir. 1996); *Payne*, 592 F. Supp. 2d at 37.

Begin with the federal statute. The FMLA "entitles eligible employees to take unpaid leave for family and medical reasons." *Gordon v. U.S. Capitol Police*, 778 F.3d 158, 160 (D.C. Cir. 2015). Employees are covered by either Title I or Title II of the law. In broad brush strokes, Title I "governs private sector and federal employees with less than 12 months of service, and Title II pertains to federal employees with more than 12 months of service." *Chandler v. Bernanke*, 531 F. Supp. 2d 193, 201 (D.D.C. 2008) (citing 29 U.S.C. §§ 2601 *et seq*. and 5 U.S.C. §§ 6381 *et seq*.). The key distinction for Manga's claim is the ability to seek a private right of action: Title I employees have that right by statute, *see* 29 U.S.C. § 2617(a)(2), but "Title II contains no analogous provision," *Russell v. U.S. Dep't of the Army*, 191 F.3d 1016, 1018 (9th Cir. 1999) (citing 5 U.S.C. §§ 6381–6387).

Indeed, every circuit court to review this issue has concluded that while Title I employees have a private right of action, Title II employees do not. *See Mann v. Haigh*, 120 F.3d 34, 37 (4th Cir. 1997) ("Title II does not contain an express provision for a private right of action to enforce the leave rights there granted [and] no implied right of action to remedy violations of Title II exists either."); *Russell*, 191 F.3d at 1019 ("We agree with the Fourth Circuit's reasoning and similarly conclude that the absence of an express waiver of the government's sovereign immunity in Title II of the FMLA bars private suits for violations of its provisions."); *Cavicchi v. Sec'y of Treasury*, No. 04-10451, 2004 WL 4917357, at *6 (11th Cir. Oct. 15, 2004) ("We agree with [the Fourth and Ninth] circuits that the absence of an express authorization precludes [appellant's] FMLA claim for retaliation[.]"); *Bogumill v. Office of Pers. Mgmt.*, 168 F.3d 1320 (Fed. Cir. 1998) (unpublished) (same); *Burg v. U.S. Dep't of Health And Human Servs.*, 387 F. App'x 237, 240 (3d Cir. 2010) (same).

And while the D.C. Circuit has not addressed the question, the judges in this district have consistently reached the same conclusion as these circuits. *See, e.g.*, *Chandler*, 531 F. Supp. 2d at 201; *Sullivan-Obst v. Powell*, 300 F. Supp. 2d 85, 99 (D.D.C. 2004); *Gardner v. United States*, No. CIV. A. 96-1467 EGS, 1999 WL 164412, at *7 (D.D.C. Jan. 29, 1999), *aff'd*, 213 F.3d 735 (D.C. Cir. 2000).

The SBA argues that "[a]s a civil servant who had worked for [the] SBA for more than 12 months, Ms. Manga was covered by Title II[.]" Defs.' Mot. at 11. Manga does not say otherwise, *see* Pl.'s Opp'n, and indeed she notes her long tenure with the SBA, *see* SAC ¶ 8 ("Plaintiff started working in the [SBA] in 1998."); *id*. ¶ 38 ("Plaintiff was a 30-year employee"). So it is undisputed that Manga is covered by Title II. And as a result, her claims under the federal FMLA are barred because Title II lacks a private right of action. *Cf*. 29 U.S.C. § 2615(a)(1) (Title I "interference" claim); *id*. § 2615(a)(2) (Title I "retaliation" claim). The Court will dismiss the federal FMLA claims in Counts V and VI for failure to state a claim. *See Chandler*, 531 F. Supp. 2d at 201 (Title II-covered employee failed to state a claim under Title I).

That leaves Manga's D.C. FMLA claims. *See* SAC ¶¶ 56–69. But here the Court lacks jurisdiction. First, the Civil Service Reform Act of 1978 (CSRA), 5 U.S.C. §§ 1101 *et seq.*, "provides the exclusive means for covered federal employees to challenge employment actions 'except where Congress specifies otherwise,' and here, Congress has not 'specifie[d] otherwise' through a D.C. statute that it did not enact." *See Coulibaly v. Kerry*, 130 F. Supp. 3d 140, 148 (D.D.C. 2015) (quoting *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 448 (D.C. Cir. 2009)). The D.C. FMLA "does not 'specif[y]' that a federal employee has any right of action against his employing agency and contains no provision that could be construed as an 'independent source of federal court jurisdiction,'" *See id*. (quoting *Lacson*, 726 F.3d at 176).

12

And even were it otherwise, the Court would decline to exercise jurisdiction over these D.C. law claims. "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Considering "judicial economy, convenience and fairness to litigants," the Court will follow the normal course and avoid a "[n]eedless decision[] of state law . . . both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Since the Court lacks jurisdiction over the D.C. FMLA claims, the remaining claims in Counts V and VI will be dismissed.

**IV.**

For these reasons, the Court will grant the SBA's Motion to Dismiss. The Court will grant the motion for lack of subject matter jurisdiction over Counts III and IV, and over the D.C. law claims in Counts V and VI. And the Court will grant the motion as to the federal FMLA claims in Counts V and VI for failure to state a claim. A separate Order will issue.

Dated: March 25, 2020                                  TREVOR N. McFADDEN, U.S.D.J.